FILED

98 MAR 19 AM 10: 14

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 19 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | } } } | |
| Plaintiff | } } | CIVIL ACTION NO. |
| vs. | } } | 96-AR-2845-S |
| CENTURY CHEVROLET-GEO, INC., | } } | |
| Defendant | } | |

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, Century Chevrolet-Geo, Inc. ("Century"), in this age discrimination case brought by the Equal Employment Opportunity Commission ("EEOC") on behalf of Angela Lynette Painter ("Painter"). Century argues that it is entitled to summary judgment because Painter was not qualified for the position in question and therefore cannot make out a prima facie case for age discrimination. Century concurrently contends that even if Painter can establish a prima facie case, she cannot show that the employer's stated non-discriminatory reason for terminating her, i.e., lack of qualification, was pretextual. Finally, Century contends that Painter failed to mitigate her damages and therefore cannot recover damages in the form of back-pay.

The court will deny Century's motion in all its aspects because there is sufficient evidence of pre-text and genuine issues of material fact exist regarding whether Painter attempted to mitigate her damages.

**FACTS**

Before her September 8, 1995 termination, Painter worked as a billing and title clerk at Century for over five years. In that position Painter performed certain computer entry duties, but those duties never involved using the company's computerized accounting system. Painter Dep., at 110 - 111, 128. Painter does, however, have some training in accounting and booking. Painter Dep., at 84 - 85, 108.

In the summer of 1995, Century lost its contract with the State of Alabama for the purchase of Century vehicles. Consequently, Century expected to lose approximately one-half of its total sales volume. Tipton Dep., at 107. As a result of the anticipated loss, David Tipton ("Tipton"), Century's president, decided to downsize. As Tipton was deciding which positions to cut and which positions to maintain, and/or merge, his vehicle accounting clerk, Linda Marie Stewart ("Stewart"), informed him that she was resigning to return to school. Because a great deal of Stewart's work had been related to the State contract, Tipton

decided to consolidate Stewart's accounting clerk position with Painter's title clerk position.

It appears both Tipton and Painter's uncle, Jerry King ("King"), who is the secretary-treasurer at Century, together made the decision to terminate Painter. In its brief in support of its motion for summary judgment, Century claims that Tipton made the initial decision to terminate Painter. Def.'s Br. at 2. Century claims that Tipton finalized the decision after consulting with King, who supervised the accounting and administrative employees, including Painter and Stewart. In King's deposition, however, he states that *he* made the initial decision to terminate Painter and that Tipton thereafter agreed. King Dep., at 81 - 82, 98. Nonetheless, both men seem to have been involved in the termination decision.

Both men claim that they decided to terminate Painter and to hire a new person for the accounting-title clerk position because of Painter's poor attitude (she was not a "team player"), poor work habits, and vulgar language. Tipton Dep., at 68 - 69. Allegedly Painter was often late for work, combative, and unwilling to perform any tasks outside of her billing and title duties. In addition, she frequently used the words "s---t" and "f--k," while in the workplace. King Dep., at 72 - 74; Tipton Dep., at 68 - 69.

3

The new accounting-title clerk position would involve working with Century's computerized accounting system and the men were reluctant to allow Painter access to such confidential information because Painter "liked to talk too much." King Dep., at 83. On more than one occasion, Painter had allegedly revealed purportedly confidential information regarding how much commission a salesperson made on a particular deal. King Dep., at 93 - 95. Finally, Century had doubts about Painters' integrity after $4,000 was taken from a Century safe and after Painter filed a worker's compensation claim it suspected was fraudulent. King Dep., at 142 - 44. Despite these concerns, Painter never received performance evaluations or disciplinary letters arguably because Century has no formal evaluation procedures in place. Tipton Dep. at 103 - 4. Eventually, Century hired Jennifer Smyly ("Smyly"), who is younger than Painter, for the accounting-title clerk position.

## PAINTER'S PRIMA FACIE CASE

Century does not dispute that Painter: 1) was a member of the protected age group; 2) was subjected to adverse employment action; and 3) was replaced by a younger individual. *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 - 8 (11th Cir. 1997) (citations omitted). Thus, the only disputed element of her prima facie case is whether or not she was qualified to perform the duties required for the new consolidated position. Century argues that Painter's alleged poor

attitude, poor work habits and vulgar language disqualified her for the accounting-title clerk position, which required an employee who was trustworthy and cooperative. Century contends that any dispute between Painter "and the Company (and particularly her Uncle Jerry King) was little more than a 'family feud' and completely unrelated to any unlawful animus." Def.'s Br. at 1. Apparently, Painter's father and brother disliked King and vice versa.

Painter makes out a prima facie case for age discrimination for Rule 56 purposes. "[C]oncerns about [an employee's] performance are more appropriately raised as part of the second and third steps of the McDonnell Douglas scheme." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1227 (11th Cir. 1993).

> Placing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy.... Most courts have avoided the redundancy by either analyzing the issues of prima facie case and pretext in tandem or by assuming a prima facie case in order to found their decision solely on pretext.

*Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 & n.2 (5th Cir. 1988)(citations omitted) (cited with approval in *Clark*, 990 F.2d at 1227). Therefore, "because [Century] has asserted poor job performance as its reason for firing [Painter, this court] need not decide whether [Painter] is entitled to an inference of qualification .... Instead, the focus of the inquiry is not a determination of whether [Painter] was in fact performing [her] job

5

adequately, but rather, whether there was sufficient evidence of unsatisfactory performance to be a legitimate concern of [Century] and whether this was the real reason for the termination and not a pretext for age discrimination." *Young v. General Foods Corp.*, 840 F.2d 825, 830 n.3 (11th Cir. 1988) (citation omitted).

In rebuttal, Century argues that the present case involves a newly created position with new duties and therefore evaluation of Painter's qualifications is appropriate in the context of her prima facie case. Presumably, Century urges the court to analyze this case as if it were a failure to hire or failure to promote case.

Even if this court were to analyze this case as Century suggests, summary judgment would not be appropriate. Century is unable to show an absence of any genuine issues of material fact on the issue of Painter's qualifications. All of the <u>objective</u> evidence indicates that Painter was qualified for the new consolidated position. Her termination document, as discussed more fully under the pretext analysis below, indicates that Century terminated Painter for "lack of work," rather than for untrustworthiness, poor work habits or tardiness. Pl.'s Ex. I. In addition, there is nothing in the record to suggest that Painter could not perform the job duties described in the job description that Century supplied to the EEOC. *See* Pl.'s Ex. H. Indeed, when

6

responding to the EEOC's allegation that Painter's replacement was not qualified for the position, Century admitted that the "job at issue was an entry level position, with no minimal qualifications and could easily be learned through on the job training." Def.'s Br. at 14.

Century's allegations that Painter did not meet its <u>subjective</u> criteria for the position do not foreclose further inquiry into the issue of Painter's qualifications. Any evidence that she failed to meet the subjective criteria for the position does not foreclose an inquiry into the actual motivation behind Century's decision to terminate Painter.

> Subjective criteria should not be considered a part of the prima facie evaluation in a summary judgment proceeding .... [W]hereas subjective employment criteria may serve legitimate functions, they also provide opportunities for unlawful discrimination ....
>
>   If a plaintiff's failure to establish that she met the employer's subjective criteria could defeat her prima facie case, the court would then not be required to consider evidence of pretext. Thus the use of the subjective criteria would go unchallenged. This result is clearly at odds with the mandate of McDonnell Douglas that a plaintiff be afforded a full and fair opportunity to demonstrate that the stated reason for rejection was in fact pretext.

*Lindsey v. Prive Corp.*, 987 F.2d 324, 327 - 28 (5th Cir. 1993) (citations omitted). Accordingly, "[i]n ruling on a summary judgment motion it is not appropriate for the district court to

7

determine whether subjective criteria are bona fide and, more critically, to make dispositive determinations about the employer's credibility." *Id.* at 327. Applying these standards, this court should find that Painter establishes a prima facie case for age discrimination.

### EVIDENCE OF PRE-TEXT

As a fall back position, Century argues that the "overwhelming undisputed evidence demonstrates that Century Chevrolet terminated Ms. Painter for legitimate and non-discriminatory reasons unrelated to her age." Pl.'s Br. at 5. Most of this "<u>overwhelming undisputed evidence</u>" (emphasis supplied) consists of Tipton's and King's deposition testimony regarding their distrust of Painter and their dissatisfaction with her job performance. Indeed, Tipton believed that, because of the familial relationship, King excused conduct by Painter that he would not have tolerated from other employees . Tipton Dep., at 106. Ultimately, Century contends, it could no longer afford to allow such circumstances to continue.

Century is not entitled to summary judgment because Painter has produced enough evidence from which a jury could find that Century's purported concern's were pretextual. It is for the jury to determine whether the evidence of a legitimate motive is "overwhelming." It is certainly not "undisputed." Most damaging

8

to Century's case is the "Separation Notice" Century produced when it terminated Painter. Pl.'s Ex. I. The notice provides the preparer with a list of reasons for the discharge: absenteeism, tardiness, inefficiency, misconduct, lack of work, or other. *Id.* The notice also contains several blank lines where the preparer can provide a "Detailed Explanation of Above." *Id.* Painter's separation notice, which Tipton and King both signed, indicates that they terminated her for "Lack of Work." The "detailed explanation" states "Sales volume less than anticipated. We consolidated two positions - into one." *Id.* While Century complains that Painter was tardy, abusive, uncooperative and vulgar, nothing to that effect appears on her discharge notice. In contrast, when Century terminated another employee it explained, on the notice, that she had been inefficient. Pl.'s Ex. J. Thus there is evidence that, in the past, Century has not hesitated to include unflattering information on an employee's termination record.

Painter also points to age related comments, made by Tipton and King, as evidence of pretext. Tipton admits that he often referred to Painter as an "old woman," although he claims to have considered it a friendly joke. Tipton Dep., at 115 - 116. King also made age related comments in Painter's presence. Painter claims that King made comments about not being able to see or hear

9

when "you" get old. Painter Dep., at 198 - 206. Painter believed that sometimes she was the "you" to whom King referred. *Id.* at 202 - 4.

There is additional evidence that could support a finding of pre-text. King testified that he believed Painter gossiped to much and therefore could not be trusted with the confidential information in the accounting system. Specifically, King indicated that he overheard Painter discussing how much commission a salesperson may have made on a specific deal. King Dep., at 93. Yet, when asked if he had "ever known [Painter] to inappropriately give out information before," King responded "I don't -- I didn't -- I don't know of any." King Dep., at 84. Tipton believed that King had overhead Painter discussing sales commissions and had based part of the decision to termination Painter on King's information. Tipton Dec., at ¶15. Yet, Bonnie Pope ("Pope"), a former Century employee, often overheard employees discussing the price of cars and the commissions derived from car sales. Pope Dec. (Doc. 34), at ¶5. Further, Pope claims that no one at Century ever told her that such information was confidential and she never knew of Century to admonish or discipline anyone for discussion such information. *Id.*

Painter can point to still more evidence which might support

10

a finding of pretext. Both Tipton and King claim that they found Painter's use of foul language inappropriate. However, Pope affirms that "most" of the employees at Century used the words, s--t, damn, and f--k, in the workplace, with impunity. Pope Dec. (doc. 34) at ¶6. Furthermore, Painter testified that, at the time of her termination, she had not used foul language for many months. Painter Dec. ¶13. She had experienced a religious conversation and she no longer used such language. *Id.* Century claims that its decision to terminate Painter was also based on her refusal to perform any duties outside those described in her job description. However, Pope testified that she found Painter quite helpful. Indeed, on "several occasions," Painter helped Pope without being asked to do so. Pope Dec., at ¶ 4. In addition, Crystal Ross, another former employee, testified that Painter offered to help cover for Ross, who was planning to take a leave of absence. Ross Dep., at 35.

There is also evidence that King treated Painter disparately. Painter alleges that King forced her to explain why she wanted to receive vacation pay in lieu of time off. Painter Dep., at 194 - 200. When she explained that she wanted the money to pay for new glasses, King apparently required that Painter bring him a receipt to verify the cost of the glasses. *Id.* However, King did not ask other employees to explain why they wanted to receive money in lieu

11

of vacation or require verification with a receipt. *Id.* Painter also claims that King was unduly hard on her and would often discipline her for conduct without disciplining other employees for similar conduct.

Further evidence of pre-text comes form Century's own admissions. Century's has provided conflicting reasons for the decision to terminate Painter. Century aggressively argues that it was not concerned with Painter's actually ability to perform the duties in the new position. Yet, when asked was there any other reason for terminating Painter, King testified that Painter was not capable of performing the "heavy booking work" and account "analysis" required for the position. King Dep., at 121. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (noting that "inconsistencies...or contradictions in the employer's proffered legitimate reasons for its action..." can support a finding of pretext).

Despite Painter's pretext evidence, the court notes that there are facts which substantially weaken Painter's case. Most damaging to Painter's case is her admission that, in response to being called "old woman," she often referred to Tipton as "old man." Painter Dep., at 134. In addition, Painter testified that on "most occasions," she believed that Tipton was kidding when he

called her "old woman." Painter Dep., at 132. Such evidence would support Tipton's assertion that the terms were used in jest. Painter, however, explains that she only began using the term "old man" because Tipton's remark hurt her feelings. By calling him old man, she hoped he would see how unpleasant it felt to be described in such a manner and stop making the remark. However, she never told Tipton or King that she disliked the age related remarks they made.

Also damaging to Painter's case is former Century employee Robin Palmertree's testimony that Painter believed some of the alleged disparate treatment she experienced was because of her strained familial relationship with King. Palmertree Dep., at 42 - 43. Notwithstanding such weaknesses, Painter has presented enough evidence to survive summary judgment.

### MITIGATION OF DAMAGES

Finally, Century contends that Painter did not mitigate her damages because she did not begin applying for jobs "face to face," until six months after her termination. In response, Painter argues that she visited the state unemployment office, but a job counselor there told her that she was overqualified for the jobs that were available at that time. Because of family illnesses, however, she did not immediately attempt a face-to-face search for

13

a job.  Instead, Painter regularly reviewed newspaper employment listings and made telephone inquiries regarding potential positions.  Unfortunately, she was under qualified for the positions or the positions paid less than she had earned at Century.  Six months later she then began pursing employment opportunities in person.  Such evidence creates a jury question regarding the adequacy of Painter's mitigation efforts during the first six months after her termination.  Accordingly summary judgment for Century is inappropriate on is failure to mitigate defense.

## CONCLUSION

Because material issues of genuine fact exist surrounding Painter's age discrimination claim and Century's failure to mitigate defense, this court will by separate order deny Century's motion for summary judgment.

DONE this 19th day of March, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

14